**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

**MILAGROS GARCIA COLON, ET ALS.,**            *

             Plaintiffs,            *

**v.**            *            **CIVIL NO. 01-1571 (DRD)**

**RAUL GARCIA RINALDI, MD, ET ALS.,**            *

             Defendants.            *

_____

# OMNIBUS ORDER

The court has been inundated by a plethora of motions filed by the parties, including replies and surreplies,  relating to the finding of the jury as to the liability of the co-defendants and as to the individual contribution amongst defendants ("acción de nivelación") individually distributing their joint and several liability. Co-defendant Hospital Pavía in a settlement agreement with plaintiff retained the right of contribution, that is to determine the individual liability amongst the joint tortfeasors. (Docket No. 425 Sealed § 4 & 5).  Pavía further did not accept negligence in the settlement documents, Docket No. 424, § 7.  There are further motions filed relating to the particular liability as to co-defendant López de Victoria. (Docket No. 388 co-defendant Dr. López de Victoria; Docket No. 390, Opposition Plaintiff Milagros García Colón.)

Further motions have been filed as to the scope of the damages hearing to be held before the jury as well as motions relating to the dates for the continuation of the

1

trial. [1]

The court addresses the matter in seriatim.

I.

The defendants in Docket No. 387 request the court to resubmit the liability issue to the jury pursuant to Rule 49. See also Docket No. 403 proposing a new liability verdict form.  The defendants objected (Docket No. 412, co-defendant López de Victoria; Docket No. 414, Hospital Dr. Sulsoni; co-defendant Ass. of Guarantee and Hospital Pavía, Docket No. 411).

The court originally questioned the jury in the Special Verdict form, (Docket No. 384), to determine liability as to each defendant that had not accepted liability, (Dr. García Rinaldi had already accepted liability), (Dockets Nos. 360 & 423 Sealed).  (Dr. García Rinaldi was hence not included as to liability.)  Under civil law this is known as the "external liability." S.L.G. Szendrey v. Hospicare, Inc. 2003 JTS 25, Fn. 5, ___D.P.R.___, 58 Official Translations  (2003) Fn. 5.  See also Jose R. Torres et al. v. Commonwealth of P.R., 194 JTS 100, 136 P.R.D. 556, 564 (1994), WL 909745 (PR) at p. 564. The jury determined liability as to Cardiovascular Surgery of Puerto Rico, Inc., Hospital Pavía,[2] Dr. López de Victoria and did not find liability as to Hospital Dr. Sulsoni. The court then proceeded to ask the jury to determine the "internal liability" between each co-defendant found jointly liable. S.L.G. Szendrey v. Hospicare, Inc., Id. The jury was prior thereto advised that Dr. García Rinaldi had accepted liability. The parties had

---

[1]     The docket has increased by at least forty-three (43) motions. Dockets 387 to 430.

[2]     **Hospital Pavía settled but did not accept liability**. Further, as stated infra, defendant waived the argument as to the exclusion of Pavía and further provided proof against Hospital Pavía.

all agreed for individual different reasons that the jury should not be advised of the settlement with Pavía Hospital, nor the terms of said settlement.

Plaintiff now requests that Pavía should not have been included in the determination as to liability to plaintiff ("the external relationship"), nor to assign individual liability amongst joint tortfeasors ("the internal liability"). Plaintiff challenges the determination of the court to determine the right of contribution amongst defendants as specifically authorized In Re N-500L Cases et all, 691 F.2d 15, 18, Fn.1 (1st Cir. 1982) citing García v. Government of Capital, 72 P.R.D. 133 (1951), P.R. Laws Ann. Tit. 31 §3109 (1976).

The doctrine of contribution constitutes an individual determination amongst the parties that are joint tortfeasors.  Hospital Pavía claims the right as they settled the case **but did not** accept liability; hence Pavía requested that the individual liability within the joint liability be determined. The matter is analogous to the factual scenario in the airplane crash of  In Re N-500L Cases wherein the defendants were all jointly and severally liable and one party requested the court to determine the individual contribution of each party (proportionate share within the joint liability) emanating from a common matrix facts that caused the airplane crash. "Appellants remained entitled to a determination of their liability for negligence, the extent of their fault relative to appellees [plaintiffs] and their proportionate share of damages before they could be held liable for contribution. Because these issues are legal and underlie a claim that 'involves rights and remedies of the sort traditionally enforced in an action at law.' Pernell v. Southall Realty, 416 U.S. 363, 375; 94 S.Ct. 1723, 1729 (1974), "appellants [defendants] had a right to a jury trial." In Re N-500L Cases, 691 F. 2d at 20.

The doctrine of contribution was well expressed in the Supreme Court of Puerto Rico case of S.L.G. Szendrey v. Hospicare, Inc. 2003 JTS 25. ___D.P.R.___, 58 Official Translations  (2003).

> "In Puerto Rico the right of contribution between joint tortfeasors has been acknowledged since García v. Government of the Capital, 72 P.R.D.133 (1951) the well-known rule that applies when the damage is caused by two or more persons provide that all joint tortfeasors are liable to plaintiff for the damages sustained by the latter. However there is among these joint tortfeasors a right of contribution derived from the Civil Code sec. 1098 (31 L.P.R.A. § 3109), which allows one of the co-debtors [Pavía Hospital] who has paid more than his or her share to claim from other co-debtors their respective shares. Thus we have held that joint tortfeasors [defendants] are solidarily liable to the injured party [plaintiff Milagros García Colón], but the onerous effect between the joint tortfeasors should be distributed in proportion to their respective degree of negligence. Security Insurance Co. v. Tribunal Superior, 101 D.P.R. 191, 208 [1 P.R. Offic. Trans. 271, 290] (1973). See also Arroyo v. Hospital La Concepción, 130 D.P.R. 596 [30 P.R. Off. Trans. __] (1992).
>
>   The main purpose of the right of contribution in Puerto Rico has been to prevent situations of unjust enrichment. As we stated in P.R. Fuels Inc. v. Empire Gas Co., Inc., 149 D.P.R. 691, 713 [49 P.R. Off. Trans. ___,____] (1992).
>
>> 'It is really aimed at "preventing situations of unjust enrichment, subjectively allocating the obligations to those [to whom], in the last instance, it may correspond."

In the settlement agreement between plaintiff and Pavía Hospital, the hospital expressly claimed the right of "nivelación," right of contribution.  (Docket No. 424, § 5.) However, this is a right that is part of the law contained in the Civil Code of Puerto Rico; hence, all defendants who are joint tortfeasors in the instant case have the right of contribution ("acción de nivelación") by disposition of the Civil Code.  See Szendrey v. Hospicare, Id., Fn. 5 (citing Article 1098 at 31 LPRA § 3109 which reads as follows:

> The payment made by any of the joint debtors extinguishes the obligation. **The person who made the payment can only claim from his co-debtors the shares pertaining to each one with interest on the amounts advanced.** The non fulfilment of the obligation by reason of the insolvency of a  joint debtor shall be made good by his co-debtors in proportion to the debt of each of them.

4

(Emphasis provided by the Supreme Court.)

There is a preliminary matter of potential waiver caused by defendants' lack of specific request of jury trial  which the court must determine prior to considering the challenge to the determination by the jury claim of contribution.

Hospital Pavía failed to request a trial by jury in its cross claim (Docket No. 71) and/or in its settlement agreement as to contribution. (Docket No. 425, Sealed). The settlement agreement stated that Pavía and/or the Guarantee Ass. reserved the right to continue with its causes of actions, cross claim, and to protect themselves filed as plaintiffs reserved "in federal and state cases."  The specific matter was again specifically addressed in the case of In Re 500L Cases, 691 F.2d at 18-23. After discussing the rights of a party to have a case decided by the jury under Parsons v. Bedford, 28 U.S. (3Pet.) 433, 446 (1830), the potential waiver of the right of contribution amongst the joint tortfeasors to be determined by the jury, the court determined that "the second sentence of Rule 38(d)" has been interpreted as incorporating a right of reasonable reliance on the jury demand of another party. "Where one party has made a demand, others are entitled to rely on the demand with respect to issues covered by the demand and need not make an independent demand other their own." In Re 500L Cases, 691 F.2d at 22. (Other citations omitted.)  The court found that "the claims for contribution were predicated on the same issue of appellants liability to the plaintiffs for negligence. The liability issue in the contribution action is based on the same matrix of facts . . ." (Citations omitted.) Id. p. 23.

The analysis is identical in the instant case and hence the jury was authorized to determine the contribution once it first determined the identity of the joint tortfeasors

under Puerto Rican Law. The jury verdict form was precisely designed to first determine liability amongst the potential joint tortfeasors and then determine the individual contribution.

Plaintiffs claim that it was an error to place Pavía Hospital as a potential joint tortfeasor.  The court strongly disagrees.

First, defendant waived the argument when it authorized the court without any objection to read the theory of Hospital Pavía as to liability and damages to the jury. The court read Pavia's position, as well as the theory of plaintiffs and all defendants, after the jury was selected as to their alleged negligence theory of liability without plaintiff expressing any objection notwithstanding that the settlement had already been reached between plaintiff and defendant Hospital Pavía. See Transcript September 5, 2006, p. 22 (L. 14-19)-23. (Statement by the court expressing Pavía's position.) Further, Hospital Pavía and the Guarantee Association without objection from the plaintiff made an opening statement defending its non liability theory as to the plaintiff.

Further, when the court provided the instructions to the jury plaintiff did not object to the instruction that should you find Pavía responsible you must determine what percentage, if any, co-defendant Cardiovascular Surgery of P.R. and Dr. García Rinaldi are to be responsible to Pavía.

Moreover, in its opening argument although plaintiff avoided using the identity of Pavía Hospital for the obvious reason that a considerable settlement amount had already been achieved as to said party, Pavía Hospital was mentioned subsilentio in "per quod" fashion on various occasions. The court briefly explains.

The principal theory of liability in the instant case developed by plaintiffs's expert

6

Dr. Alan Koslow was that notwithstanding that the plaintiff showed all the signs of an infected graft, Dr. García Rinaldi, as well as other physicians at Pavía Hospital treating plaintiff Milagros Guzmán Colón, for months failed to recognize the alleged obvious signs that clearly pointed to an infected graft. This became known at trial for the benefit of the jury, as the "klop-klop-klop" theory, meaning that horses when trotting all create the same apparent sound by their hoofs in the pavement and said sound to blind persons would seem to be of horses approaching. However, if they were not blinded, they would rapidly determine that the sound was not created by horses but by zebras. Translated to the operative facts of this case, Dr. García Rinaldi and the entire medical staff of Pavía Hospital, treating plaintiff for months, notwithstanding the obvious medical signs shown by plaintiff while she was hospitalized at Pavía Hospital, blindly failed to recognize the obvious medical symptoms of an infected graft.  When plaintiff, Milagros Guzmán, was hospitalized at Pavia Hospital she showed signs of bacterominia, infrequent fever, and other related medical signs pointing to an infected graft. The defendant was hospitalized for months and attended by Dr. García Rinaldi, Dr. López de Victoria, and other physicians and personnel at Pavía Hospital which could not see the obvious zebra and kept thinking that the "klop-klop-klop" sound was being produced by horses.  (Other potential medical malignancies but not an infected graft.)

Pursuant to local law, as expressed in <u>Marquez Vega v. Martínez Rosado</u>, 116 D.P.R. 397, 16 P.R. Offic. Trans. 487, the hospital is liable to the patient under the theory that "said institutions owe their patients the degree of care that would be exercised by a reasonable and prudent man." (Citations omitted Id. 16 P.R. Offic. Trans. 487 at p. 4. "The hospital's liability has been predicated on the various liability

doctrines." Art. 1803 of the Civil Code of Puerto Rico, 31 L.P.R.A. § 5142. It includes "the quality of services rendered by staff physicians  . . . ensur[ing] the quality of patient care . . ." Márquez Vega v. Martínez Rosado, Id., quoting Hernández v. Assoc. Hash., 106 D.P.R. 72, 80-81.  Further "the duty of care for the patient not only corresponds to the physician, but to the hospital as well." Marquez Vega v. Martínez Rosado, Id. quoting Hernández v. Assoc. Hosp. del Maestro, Id.

In the instant case it was Dr. García Rinaldi who was providing the main services, a physician with privileges but the services were originally retained "through a private office." The court in Marquez Vega v. Martínez Rosado, Id. clearly states that then "situation is somewhat different . . . " The main relationship is with the patient and the physician . . .  In this case, as a rule, the hospital should not be held liable for the exclusive negligence of an unsalaried physician, who was first and foremost entrusted with the patients health."  Marquez Vega v. Martínez Rosado, Id. p. 5.  However, the hospital may notwithstanding be liable as the "hospital has the continuous obligation to protect the health of its patients by (a) carefully selecting the physicians who, for some reason or another, are granted the privileges of using its facilities (citations omitted), (b) requiring that said physicians keep up-to-date through professional advanced studies (citations omitted), (c) monitoring the labor of said physicians and taking action, when possible, in the face of an obvious act of malpractice." Marquez Vega v. Martínez Rosado, Id. p. 5-6 (Emphasis supplied.)

In the instant case the theory of plaintiffs' expert  Dr. Alan Koslow  was precisely that co-defendant Dr. García Rinaldi and the medical staff  incurred in "obvious acts of malpractice" as to plaintiff's treatment for extended periods of time refusing to see that

8

the symptoms lead to only one conclusion, an infected graft. Hence, the hospital is responsible for not "taking action in the face of an obvious act of malpractice."  Márquez Vega, Id.

Plaintiff did not mention Pavía at its opening statement but did mention that for extended periods of time while at Pavía, Dr. García Rinaldi, and other physicians attending the plaintiff refused to see for months obvious signs pointing to a diagnosis of an infected graft. (See Opening Statement Sept. 5, 2006, 32-55).

Plaintiff in its opening statement claimed that the physicians were for months confused by other complications like arrhythmia and the producing of clots potentially blocking the graft, instead of correctly diagnosing an infected graft. The hospital further delayed corrective action by redoing unnecessarily certain tests, CT scans and other malignant, blood related symptoms. (Tr. 9-5-06, p. 54-56.)  Dr. García Rinaldi should have known the obvious symptoms shown by plaintiff pointing to the conclusion that the graft was infected on 6/15/95; but Dr. García Rinaldi refused to examine and remove the graft. (Tr. P. 9/5/06, p. 54-55.)

Further, the plaintiff when she entered the hospital for the last time at Pavía Hospital, leading to various amputations, she entered through the emergency room, as opposed to a hospitalization order from her physician  Dr. García Rinaldi. In this situation a reasonable jury could very well determine that in this case the hospital responds directly  independent from the vicarious liability for "obvious acts of malpractice," Marquez Vega v. Martínez Rosado, Id. p. 5-6, of the physicians but on their own for not providing the "patient the degree of care that would be exercised by a reasonable and prudent "man." Marquez Vega v. Martínez Rosado, Id. p.4.

9

Hence, the court concludes that not only the plaintiff waived the exclusion of Hospital Pavía as a defendant but also by their own conduct in their opening statement and subsequently at trial provided sufficient evidence to include Hospital Pavía as a defendant for an ultimate determination of liability.  Furthermore in the settlement agreement Hospital Pavía and plaintiffs both retained the right to "continue with the prosecution of their claims" which included Pavía's  cross claim against Dr. García Rinaldi.  Should Pavía be eliminated as defendant their cross claim would become moot and hence lost. Pavía, therefore, by contract with plaintiff (the settlement agreement) must have remained as a defendant in order to potentially be able to continue with its cross claim against Dr. García Rinaldi.

As to right to seek contribution not only had Pavía retained the right to "prosecute their claims" currently filed, § 4 of Settlement Agreement, (Docket No. 424), but also they retained the right to seek contribution pursuant to local law, via Article 1098, at 31 L.P.R.A. 3109, see Szendrey v. Hospicare, Inc., 58 Offic. Trans. – at p. 7 Fn. 5.

### I-A

The court now tackles plaintiff's second objection that is that Cardiovascular Surgery should not have remained as a defendant nor should have been included separately as a co-defendant from Dr. García Rinaldi as part of the determination of individual liability determined as to the joint tortfeasors, the contribution doctrine. The court disagrees.

First, as to Cardiovascular Surgery of P.R. Inc., not only did plaintiff allege a cause of action against said corporation, but produced evidence against them by

showing that plaintiff Milagros García Colón received services provided by Dr. García Rinaldi at said medical institution but also that the names of Dr. García Rinaldi and Dr. Orlando López de Victoria were located at prominent places within the building occupied by Cardiovascular Surgery of Puerto Rico, Inc.  All obviously showing evidence that Dr. García Rinaldi and Dr. López de Victoria were agents of said corporate defendant. Hence, the request that Cardiovascular should be eliminated as a defendant is unwarranted in lieu of the claim at the complaint and the evidence provided by plaintiffs.

### I-B

Plaintiffs' also request that at the contribution stage of the Special Jury Verdict form, (Docket No. 384, p. 1, q.3), Dr. García Rinaldi and Cardiovascular Surgery of Puerto Rico, Inc. should be in the same block together as one party. Again the court disagrees and briefly explains. In the local jurisdiction of Puerto Rico there is a presumption that a corporate entity is separate from its stockholders, directors, officers, employees and/or any controlling entity.  Fleming v. Toa Alta Development Corp., 96 P.R.R. 234, 237 (1968) citing Cruz v. Ramírez, 75 P.R.R. 889, 895 (1954).  Plaintiff may, however, pierce the corporate veil of a corporation "by strong and robust evidence" under limited circumstances. San Miguel Testil Corp. v. P.R. Drydock, 94 P.R.R. 403, 409 (1967). A party must show that piercing of the corporate veil is "necessary or proper or justified" in order to pierce the corporate veil.  Mills Factors Corp. v. Registrar, 87 P.R.R. 369, 375 (1969). The principal reasons that justify the piercing of  a corporate veil are that the corporation is being used to sanction fraud, provide injustice, evade obligations, defeat public policy, justify inequity, protect fraud or

11

defend crime.  Rurico S. Díaz, Secretary of Consumer Affairs v. Comunidad San José, Inc., 130 D.P.R. 782, 798 (1992) (sufficient evidence must be presented to pierce the corporate veil to justify the imposition of responsibility beyond the corporation,– its directors, officials or stockholders id citing San Miguel Testil Corp. v. P.R. Drydock, 94 P.R.R. at 409.) The burden to pierce the corporate veil lies on the party seeking to pierce the veil.  Rurico S. Díaz, Secretary of Consumer Affairs v. Comunidad San José, Inc., 130 D.P.R. at 800.

Plaintiff not only failed to make any allegation in the complaint to pierce the corporate veil but also provided no proof whatsoever at trial to comply with the local requirements in order to proceed to pierce the corporate veil of the corporation. Hence, Cardiovascular Surgery of P.R., Inc., cannot be eliminated as a potential co-defendant as to liability from the Special Verdict Form nor can they be excluded from determination of contribution separate from co-defendant Dr. García Rinaldi.

However, there is also a bankruptcy related reason for denying the request. Dr. García Rinaldi is under bankruptcy protection and the Cardiovascular Surgery of Puerto Rico, Inc. is not.  It would be gross mistake linking these two joint tortfeasors together both at liability stage and/or at contribution stage since one is protected by bankruptcy provisions while the other is not. Further, as to contribution determinations there is a special statutory condition which is applicable at contribution stage to an insolvent under Puerto Rican Law.

_____ "The nonfulfillment of the obligation by reason of the insolvency of a joint debtor shall be made good by his co-debtor in proportion to the debt of each of them."

Should joint co-debtors Dr. García Rinaldi and the corporation be placed

12

together, the contribution mandate as to an insolvent joint tortfeasor can not be enforced since the percentage of the bankrupt being together with a non-protected defendant would be unknown.  Finally, the right of recuperation in contribution by Pavía would be lost since a non-bankrupt party, the corporation, is included with a bankrupt party, Dr. García Rinaldi.

**I-C**

Plaintiff further requests at Docket 387 that the verdict of no liability as to Dr. Sulsoni Hospital should also be resubmitted and vacated. Hospital Dr. Sulsoni has filed an opposition, Docket No. 414. For the same reasons set above as to the doctrine of the right of contribution amongst defendants pursuant to the doctrines of <u>García v. Government of the Capital</u>, 72 P.R.D. 133, <u>In Re 500L Cases et al.</u>, 651 F.2d 18 Fn. 1, and <u>Szendrey v. Hospicare</u>, 2013 J.T.S. 25, ___P.R.D.___, 58 Offic. Trans. (2003), all defendants, including Hospital Dr. Sulsoni, have a right to determine amongst themselves their individual contribution within the joint liability.

As to liability between plaintiff and Hospital Dr. Sulsoni, the court finds that the determination found by the jury of no liability is well grounded on the evidence. The physicians attending the plaintiff at Hospital Dr. Sulsoni had a reasonable medical reason to discharge the plaintiff from Hospital Dr. Sulsoni to be attended by the physician who operated and originally inserted the graft to the plaintiff. After all, removing a graft constitutes a major surgery, admitted by all experts, and plaintiff was stable at discharge. Should the graft have been or not infected, it was not unreasonable for a physician at Hospital Dr. Sulsoni to send the patient; then in stable condition,  for potential removal thereof to the physician who inserted the graft in the patient. The

13

court does not deem a malpractice sending the patient on her own with her family to be attended on the same date to the offices of Dr. García Rinaldi who attended her that same date and discharged her in  stable condition. Refusing to send the patient by ambulance did not cause her any additional deterioration.  Further, there was testimony that Hospital Dr. Sulsoni did not have the proper facilities to provide proper medical surgery for the removal of the graft.[3]

Hence, plaintiffs' request made at Docket No. 387 is **DENIED** in its totality.

II.

The court now undertakes the resolution of Dr. López de Victoria's request of dismissal as a matter of law pursuant to Rule 50(a)(1), Docket No. 388. The motion was duly opposed by Plaintiff at Docket No. 390, Opposition to Motion of Dismissal as a Matter of Law filed by Dr. López de Victoria. Plaintiffs replied at Docket No. 397, Motion Submitting Selected Portions of Transcript of Dr. Koslow's Testimony, etc.

Defendant advances various theories to dismiss the case, to wit:  prescription, reasonable error in medical judgment, lack of evidence to justify negligence, and, the latest reason, motivated by a finding of only five percent (5%) liability in contribution amongst defendants under the theory of "absorption of negligence" from the Civil Code of Puerto Rico.

The court continues to maintain under advisement the determination as to prescription, reasonable error in medical judgment and lack of evidence showing

---

[3]    Even if there was testimony to the contrary, the jury certainly could have found that it was not unreasonable to send the plaintiff to the doctor who originally placed the graft for potential removal.

14

medical malpractice. The court is to carefully examine the matter, with both parties making specific references to the record, the matter of prescription and thoroughly analyzing as to medical malpractice the limited participation of defendant, Dr. López de Victoria, from October 28, 1995 to February 4, 1996 (around 26 interventions). The court is to examine every intervention and at the same time review other matters that were contemporaneously occurring medically as to the plaintiff with other symptoms and/or illness she experienced while hospitalized at Pavía. However, the court must deny as a matter of law the request made based on the theory of absorption.  This theory basically stands for the proposition that when one of the faults is significantly larger than the other, the larger fault absorbs the lesser.

Plaintiff bases its theory in that, amongst the defendants, liability was established pursuant to the verdict form (Docket No. 384) in the following fashion: Dr. Raúl García Rinaldi 50%; Cardiovascular Surgery 20%; Hospital Pavía 25%; Dr. López de Victoria 5%.  Dr. López de Victoria alleges that the five percent (5%) should be absorbed amongst the remaining defendants.  However, the court finds that his doctrine is strictly limited and exclusively applicable between the relationship of plaintiff and defendant. Toro Lugo v. Ortiz Martínez, 113 P.R. Offic. Trans. 73, 75, 113 P.R.D. 56 (1982) WL 210594 (1982). ". . .governed by the norm that the **fault of plaintiff totally absorbs that of the defendants** because of the evident disproportion in faults." In Re Quiñonez v. Manzano, 141 P.R.D. 139 (P.R. Supp. 1996). (Emphasis ours.) The court in dicta held that the matter constituted a comparison between plaintiff and defendants." Later, in Soto Cabral v. E.L.A., 138 P.R.D. 298, 320 (P.R. Supp. 1995) the comparison of

negligence was again between plaintiff and defendant.

Defendant alleges that the case of <u>Cárdenas Maxan v. Rodríguez</u>, 125 P.R.D. 702 (1990) stands for the proposition that the doctrine applies between the defendants. But the Puerto Rican Commentator, Supreme Court Associate Justice, Carlos Irizarry Yunqué, now professor at law teaching torts,  most assuredly affirms to the contrary. Responsabilidad Civil Extracontractual, Carlos Irizarry Yunqué, Third Edition 1998.

> "The norm adopted in Toro Lugo [the theory of absorption] is not applicable to the case of Cardenas Maxan for two reasons. (1) The norm refers to disproportion in the respective gravity of faults between "the defendant and the victim" **and not between two causing defendants**, and (2) **it is limited to "the intentional fault and to the problem of the assumption of risk or to the risk of the defendant**." (Translation ours; emphasis ours.)

Further, the court has reviewed the treatise as to the absorption doctrine cited at <u>Cárdenas Maxan</u>, Id., Tratado Teórico y Práctico de la Responsabilidad Civil Delictual y Contractual by Henri Capitant, Volume II, Fifth Ed., translated to Spanish by Luis Alcalá Zamora y Castillo and finds squarely that the theory applies between "the faults of the defendant and the victim" (la desproporción existente entre la respectiva gravedad de las culpas del demandado y de la victima.") § 1480, p. 75.  Moreover, there must be some degree fault in the victim. ("...su autor (el demandante) ha querido el daño o al menos lo ha consentido.") Finally, as stated by torts law professor, commentator, former Supreme Court Associate Justice Irizarry Yunqué,  "the question (of absorption) is limited to intentional fault and assumption of risk or the consent **of the victim**." (Emphasis ours.) (Translation ours) Id. P., 76 § 1480.

Finally, although the case of <u>Ruiz Troche v. Pepsi Cola</u>, 161 F.3d 77, 87 (1st Cir. 1988) states that the theory of absorption literally was translated to mean "under the

16

principle of efficient cause, when one party is the "sole and efficient cause of damage" another's negligence during the conduct, if it did not cause it, does not subject it to liability."  Toro Lugo v. Ortiz Martínez, 113 P.R. Offic. Trans. 73, 75, 113 P.R. D. 56 (1982).  In Ruiz Troche, Id at p. 88, "under the absorption theory, if one tortfeasor is only slightly responsible the overwhelming negligence of the other tortfeasor "absorbs" the minimal negligence of the former and the latter bears all the responsibility." However, an examination of the facts reveals that the court was addressing the negligence of the driver of the plaintiffs who was allegedly under the influence of cocaine (an agent of plaintiff) and the defendants. "Ruiz's [the plaintiff's driver] alleged cocaine intoxication formed the foundation not only for defendant's insistence that Ruiz [the plaintiff] was guilty of negligence but also for their insistence that Hernández [defendant driver] was not negligent."  The relationship of absorption being analyzed by the Circuit Court in Ruiz Troche was therefore the negligence between the plaintiff and defendant and not between the negligence of two defendants.

Hence, the court can not base on the doctrine of absorption of negligence, to relieve the liability of Dr. López de Victoria based on two defendants disproportionate liability. The court, therefore, **DENIES IN PART** defendant's Dr. López de Victoria request, (Docket No. 388), and holds in abeyance as heretofore stated the remaining causes of dismissal under Fed. Civ. Rule 50(a)..

III.


The court now addresses plaintiff's request entitled Plaintiff's Motion in Limine to Exclude any Expert Testimony in Damages from Defendant, (Docket No. 401), and

17

Plaintiff's Motion in Limine to Exclude and Prohibit any Evidence, Argument, Mention, or Implication of Causation Issues, (Docket No. 400). The defendants duly opposed at Docket Nos. 408, 409, (Dr. Raúl García Rinaldi); Docket No. 412 (Dr. Orlando López de Victoria). Plaintiff also filed a Reply at Docket No. 413.

In the instant case the court bifurcated the case during trial proceedings in two phases, (1) liability, (2) damages. Hence, all witnesses and experts notified at pre-trial procedures and/or deposed as to liability that also offered opinion as to damages are obviously not barred.[4]

Plaintiff must now prove damages caused as a result of the liability.

Further and most troublesome is the fact that all co-defendants have alleged the defense of the preexistent medical condition of plaintiff Milagros García Colón. Defendant is entitled to present its theory of preexistent medical condition. The line as to the consequence of a pre-existent medical condition in liability as distinguished from damages is sometimes blurred:

> "Under the rule that the defendant takes the plaintiff as he or she finds him or her, the plaintiff's recovery cannot be proportionately reduced because of a preexisting condition. However, there are exceptions to the rule. **If the plaintiff was incapacitated before the accident, the defendant is liable for the additional harm he or she caused. If the plaintiff has a preexisting condition that would inevitably worsen, a tortfeasor who inflicts a subsequent injury is liable only for the additional harm or aggravation that he or she caused.** Thus, except in cases where the tortious injury activated a latent tendency, the defendant can be held liable only to the extent that his or her negligence proximately and naturally aggravated the preexisting condition; **the recovery includes no damages for injuries which result from the original condition but is confined to those which are due to its enhancement or**

---

[4]    Dr. García Rinaldi and Dr. Frank Veith may both testify as to damages (particularly as to damages and pre-existed condition of defendant; they were apparently noticed as witnesses and/or experts including damages).

aggravation. **This means that the jury must apportion that part of the disability resulting from the preexisting condition from that part of the disability resulting from the defendant's negligence, if possible.  However, if the jury cannot apportion damages between the preexisting** and the aggravating disability, the defendant is liable for the total disability." 22 AM. Jur. 2d Damages § 240. (Footnotes citing cases omitted.) (Emphasis ours.)

The rule was well stated in Kegel v. United States, 289 F. Supp. 790 (D.

Montana 1968):

"A negligent actor may be liable for harm increased in extent by another's unforeseeable physical condition, where, for example, a slight injury causes a cancerous condition to 'light up' and localize, or where a minor injury has serious consequences because of a latent infection." Restatement, supra, § 461. On the other hand, 'the injured person may not recover damages for injuries which are not attributable to the wrongful act, but which result from his original condition * * *'. **25 C.J.S. Damages § 21, p. 659**. **Where a pre-existing condition is 'bound to worsen, * * * an appropriate discount should be made for the damages that would have been suffered even in the absence of defendant's negligence**.' **Evans v. S. J. Groves & Sons Co., 2 Cir. 1963, 315 F.2d 335, 348**." (Emphasis ours.)

Further, in Prosser on Torts, 3rd Ed., 301, the rule was restated as follows:

"The defendant of course is liable only for the extent to which his conduct has resulted in an aggravation of the pre-existing condition, and not for the condition as it was; but as to the aggravation, foreseeability is not a factor."

See also Maurer v. United States, 668 F.2d 98 (2nd Cir. 1981) standing for the

following proposition:

"It is a settled principle of tort law that when a defendant's wrongful act causes injury, he is fully liable for the resulting damage even though the injured plaintiff had a preexisting condition that made the consequences of the wrongful act more severe. . . than they would have been for a normal victim. The defendant takes the plaintiff as he finds him. A plaintiff's recovery for damages caused by a defendant's wrongful act may not be proportionately reduced because of a preexisting weakness or susceptibility to injury such as an osteoarthritic condition or a weakness caused by a previous injury." (Citations omitted.)

However there are two critical exceptions to the general norm stated above:

"First, when a plaintiff is incapacitated or disabled prior to an accident, the defendant is liable only for the additional harm or aggravation that he caused. **Second, when a plaintiff has a preexisting condition that would inevitable worsen, a defendant causing subsequent injury is entitled to have the plaintiff's damages discounted to reflect the proportion of damages that would have been suffered even in the absence of subsequent injury, but the burden of proof in such cases is upon the defendant to prove the extent of the damages that the preexisting condition would inevitable have caused.**" (Citations omitted.) (Emphasis ours.)

See Kegel v. United States, Id. at 796, FN 10.

_____ Therefore, the court GRANTS the request as to no further proof to be presented as to liability. However, defendants are not precluded from using witnesses nor experts as to the extent of damages nor as to the preexistent condition of plaintiff as a potential decreasing factor or no damages as previously explained. Dockets Nos. 400 and 401 are therefore resolved as stated herein.[5]

IV.

_____ Finally, the court considers plaintiff's request to admit in evidence a video entitled Day in Life Film, (Docket No. 402). Defendant Dr. García Rinaldi duly objected, (Docket No. 407); co-defendant Dr. López de Victoria joined in Dr. García Rinaldi's objection, (Docket No. 412). The court had previously stated that the film would be admitted if properly authenticated and with the proper deletions including the deletion of showing of defendant with all her leg extremities which the court previously concluded was

---

[5] Plaintiff is advised that they are to have experts ready to testify as to damages, if any, and/or relating to pre-existent condition. The court is not to delay this case any further.

extremely inflammatory and obviously did not take into consideration prior surgeries, an amputation, and preexistent conditions duly testified by plaintiff's own expert witnesses. Further, the court advised later plaintiff in open court, after the challenge by defendants, that the judge would not change its ruling but forewarned as to duplicitous evidence as to damages. Hence, the court cautioned as to repeating via the video film prior testimony as to damages or vice versa.[6]   Finally, the court ordered plaintiff to respond to the instruction request made by Dr. García Rinaldi contained at Docket No. 407. (Instruction as to lighting, sympathy, lack of continuity, power lens zooms during physical pain of plaintiff; and an instruction under Bolstridge, Id.  Plaintiff duly replied at Docket No. 428, plaintiff's Reply to Opposition to Motion in Limine to Admit Evidence, A Day in The Life Film.

The court shall, of course, reexamine the film as recognized by plaintiff at its Memorandum, Docket No. 428, to ensure that the potential inflammatory matters at Fn. 1 and 2, p. 2 are not present, i.e. "excessive depiction of pain," "self- serving behavior," "distortions of realities," "self serving editing," "improper lighting and film speeds."  The court, however, reiterates its prior ruling of accepting the video film "in conjunction with live testimony."  Bannister v. Noble, 812 F.2d 1265, 1270 (10th Cir. 1987). However, the court reiterates that "although illustration is better than words"– Bannister, 812 F.2d at 1270, the court is not to authorize words and films to illustrate the same damages. Plaintiff as to the subject matter shown in the film will choose either words (of plaintiff Milagros García Colón or her son) or the film but not both.

---

[6]     As to cumulative evidence the court refers to Bolstridge v. Central Maine Power Co., 621 F. Supp. 1202, 1203 (D.Me. 1985).

_____Defendants, however,  insist that the law in our circuit is that cumulative evidence surfaces only if two films [videos] or a combination of a film and photographs exists over the same subject matter, grounded on Szeliga v. General Motors, 728 F. 2d 566, 567-568 (1st Cir. 1984). No cumulative effect occurs according to plaintiff should there be testimony and a film. However, "[t]he question of permitting the showing of a motion picture [video] is one of sound and broad discretion of the District Court . . . (citations omitted) each case must be judged under its own particular facts taking into account the specific purposes for which this type of evidence is submitted." (Citations omitted.) Szeliga, Id. at 567.[7] Moreover, the court at Szeliga, Id. carefully "conducted extensive voir dire" and "carefully instructed the jury." The proper aforementioned safeguards are to be taken by the court and provided, there is no duplicity, the court determines that the probative value outweighs any prejudice that the film might have under Fed. R. Evid. 403. The court attempts to avoid duplicity in the repetition of testimony and the matter covered by the video. The court further considers the particular circumstance that the jury has had ample opportunity to observe the plaintiff during all  the days she attended the trial (two (2) days jury selection, sixteen (16) days of trial; the plaintiff has attended most of these days).

Therefore, the court GRANTS the request as to the showing of the film A Day in the Life [of plaintiff] provided proper safeguards are taken, as stated herein and

---

[7]     See also Johnson v. William Ellis & Sons Iron Works, 604 F.2d 950, 958 (5th Cir. 1979) ("Whether to admit the showing of a motion picture or to allow a jury to visit an accident site is within the sound discretion of the district court.)

provided no duplicity exists.[8] The court is also to provide an instruction as to the lighting of the film and any other potential inflammatory matter, which is contained in the video not ordered to be excluded.

All extensions of time related to the herein resolved motions are granted as well as motions requesting authority to file replies and surreplies. (Dockets Nos. 413, 416, 417, 428.)

The Motion Requesting Remedy under Fed.R.Civ. Pr. 54(d), Docket No. 422, and the Response in Opposition thereto, Docket No. 427, filed by M. Pavía Fernández and the Joinder Request for Attorney Fees, Docket No. 429, filed by plaintiff is held in abeyance pending a hearing after trial. The court further notes the justified absence of plaintiff's counsel during Thanksgiving weekend due to prepaid vacations. (Docket No. 430) and the conflict of counsel for the López de Victoria with a trial in local courts.

All motions requesting setting of a trial are moot since **trial has been set for December 5, 2006.** The Motion to Dismiss filed by co-defendant Dr. López de Victoria, Docket No. 388, remains under advisement.

IT IS SO ORDERED.

At San Juan, Puerto Rico, this 28th day of November 2006.

s/ Daniel R. Domínguez
**DANIEL R. DOMINGUEZ**
**U.S. DISTRICT JUDGE**

---

[8]     As to cumulative evidence in the showing of films see 3 Stein on Personal Injury Damages Treatise,, § 22:39 (3rd. Ed.).

23